1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      DAVID ARNOLD RODRIGUEZ,                    No.  2:19-cv-1108 MCE AC P

12                     Plaintiff,

13            v.                                    ORDER AND FINDINGS &
                                                    RECOMMENDATIONS
14      N. ALBONICO, et al.,

15                     Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF

19   No. 55.

20      I.      Procedural History

21          This case proceeds on plaintiff's first amended complaint.  ECF No. 9.  On screening, the

22   court found that plaintiff had stated claims for relief against defendants.  ECF No. 23.  After the

23   close of discovery, defendants filed a motion for summary judgment.  ECF No. 55.  Plaintiff filed

24   a cross-motion for summary judgment (ECF No. 72) and an opposition (ECF No. 73).  The cross-

25   motion was construed as a further opposition to the motion for summary judgment, and plaintiff

26   was given an opportunity to submit another copy of his opposition because it appeared to be

27   incomplete.  ECF No. 74.  Plaintiff proceeded to file a complete copy of his opposition.  ECF No.

28   75.

                                                    1

1    II.    Plaintiff's Allegations

2        Plaintiff alleges that defendants Albonico, Loftin, and Jackson violated his rights under

3    the Eighth Amendment.  ECF No. 9.  Specifically, plaintiff alleges that on May 19, 2015, Loftin

4    and Jackson escorted plaintiff to Albonico's office to talk and for a disciplinary hearing.  Id. at 5,

5    ¶¶ 1-3.  After plaintiff was seated, Loftin stood behind plaintiff and began digging his fingers into

6    plaintiff's shoulders for no reason, causing pain and discomfort.  Id., ¶ 4.  This continued

7    throughout the meeting with Albonico and neither Albonico nor Jackson attempted to stop Loftin,

8    despite plaintiff's obvious pain and discomfort.  Id.  At the end of the meeting Albonico

9    threatened plaintiff and told him that if he kept disrespecting staff he was going to get hurt.  Id. at

10   6, ¶ 6.  During the escort back to plaintiff's cell, Loftin and Jackson deliberately elevated

11   plaintiff's arms so that he had to bend at the waist to prevent his shoulders from dislocating, and

12   as they approached plaintiff's wing they coordinated to body slam plaintiff face first into the

13   concrete floor, causing plaintiff to lose consciousness and sustain significant injuries.  Id. at 6-7,

14   ¶¶ 8-13.  Defendants, including Albonico who responded to the scene, then failed to get plaintiff

15   medical assistance in a timely manner.  Id. at 8, ¶¶ 14-17.

16   III.   Motion for Summary Judgment

17       A.    Defendants' Arguments

18       Defendants argue that they are entitled to summary judgment because the claims are

19   barred by the statute of limitations and plaintiff failed to properly exhaust his administrative

20   remedies prior to filing suit.  ECF No. 55-2.

21       B.    Plaintiff's Response

22       "Pro se litigants must follow the same rules of procedure that govern other litigants."

23   King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

24   Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

25   established that district courts are to "construe liberally motion papers and pleadings filed by

26   pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

27   611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without

28   counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily

2

1  imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

2  Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

3  internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

4  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

5  omitted).

6     Accordingly, though plaintiff has partially complied with the rules of procedure, the court

7  will consider the record before it in its entirety.  However, only those assertions in the opposition

8  which have evidentiary support in the record will be considered.

9     Plaintiff appears to argue that this action is timely under the continuing violation doctrine

10  and that he was excused from exhaustion because his appeal was improperly cancelled as

11  untimely.  ECF No. 72 at 5-7.

12    IV.  Legal Standards for Summary Judgment

13     Summary judgment is appropriate when the moving party "shows that there is no genuine

14  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

15  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

16  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig.,

17  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

18  The moving party may accomplish this by "citing to particular parts of materials in the record,

19  including depositions, documents, electronically stored information, affidavits or declarations,

20  stipulations (including those made for purposes of the motion only), admissions, interrogatory

21  answers, or other materials" or by showing that such materials "do not establish the absence or

22  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

23  support the fact."  Fed. R. Civ. P. 56(c)(1).

24     "Where the non-moving party bears the burden of proof at trial, the moving party need

25  only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

26  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

27  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

28  motion, against a party who fails to make a showing sufficient to establish the existence of an

1    element essential to that party's case, and on which that party will bear the burden of proof at

2    trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

3    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

4    a circumstance, summary judgment should "be granted so long as whatever is before the district

5    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

6    56(c), is satisfied." Id.

7        If the moving party meets its initial responsibility, the burden then shifts to the opposing

8    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

9    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

10   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

11   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

12   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

13   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

14   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

15   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

16   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

17       In the endeavor to establish the existence of a factual dispute, the opposing party need not

18   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

19   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

21   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

22   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

23   whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

24   quotation marks omitted).

25       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

26   court] draw[s] all inferences supported by the evidence in favor of the non-moving party."

27   Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).

28   It is the opposing party's obligation to produce a factual predicate from which the inference may

4

1    be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

2    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

3    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

4    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

5    non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank,

6    391 U.S. at 289).

7           Defendants simultaneously served plaintiff with notice of the requirements for opposing a

8    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

9    summary judgment.  ECF No. 55-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

10   1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

11   Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

12        V.        Undisputed Material Facts

13          Except as noted, the following facts are undisputed.  Additional facts have been taken

14   from the records of plaintiff's appeals, the authenticity of which are not in dispute.

15          At all relevant times, plaintiff was a prisoner in the custody of the California Department

16   of Corrections and Rehabilitation, and he is serving a prison sentence of less than life.

17   Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 55-3) ¶¶ 1, 3; ECF No. 75 at 1-2.[1]

18          Defendants state that inmate Appeal No. HDSP-Z-15-01436 was submitted on June 3,

19   2015, which is the same date reflected in the appeals tracking system.  DSUF ¶ 4; ECF No. 55-4

20   at 8.  The appeal form is stamped as being received by the HDSP Appeals Office on June 2, 2015.

21   ECF No. 55-6 at 12.  The grievance alleged the same conduct by defendants as is alleged in this

22   action.[2]  DSUF ¶ 4.  The appeal was partially granted at the first level of review.  Id.  Defendants

23

24   [1] Although plaintiff denies DSUF ¶ 3, he states that he is indeterminately sentenced to 104 years
     to life with the possibility of parole.  ECF No. 75 at 2.  Since plaintiff's sentence includes the
25   possibility of parole, it is a sentence of less than life.
     [2] Plaintiff disputes DSUF ¶ 4 on the ground that it "mischaracterizes incident narrative described
26   in complaints and appeal log No. HDSP-Z-15-01436."  ECF No. 75 at 3.  However, DSUF ¶ 4
     summarizes only those allegations made in plaintiff's first level appeal and plaintiff's argument
27   that it does not address other facts not contained in the appeal does not create a dispute of fact.
     DSUF ¶ 4 is therefore deemed undisputed.
28

1 state that the appeal was granted in part on July 14, 2015, the same date reflected in the appeals

2 tracking system as the date of completion.  Id.; ECF No. 55-4 at 8.  The first-level response is

3 dated July 9, 2015, and was signed by the reviewing authority on July 10, 2015.  ECF No. 55-4 at

4 19-20.  On the copy of the appeal form maintained by the HDSP Appeals Office, the box

5 indicting when the first-level response was "mailed/delivered to appellant" has "7/14/15" crossed

6 out with "7/21/15" written underneath and a further notation that it was "Rec'd on August 15,

7 2015 at ASU 2-G-187 Delivered by Sgt. Kiel/Rec'd 9/29/15 [illegible] office."  Id. at 17.  An

8 effective communication assignment form also indicates that on August 15, 2015, Sgt. Kiel was

9 assigned to assist plaintiff with understanding the appeal response.  Id. at 25.

10      Plaintiff filed an appeal at the second level.  DSUF ¶ 5; ECF No. 75 at 4.  Defendants

11 assert that plaintiff appealed to the second level of review on December 10, 2015, the same date

12 reflected in the appeals tracking system.  DSUF ¶ 5; ECF No. 55-4 at 8.  Plaintiff claims that he

13 appealed to the second level of review on September 5, 2015, the same day the second-level

14 appeal is dated, ECF No. 75 at 4, 11.  The copy of the appeal form maintained by the HDSP

15 Appeals Office includes stamps showing it was received at the HDSP Appeals Office on

16 October 9 and December 10, 2015, and there is a third stamp indicating receipt on December 3,

17 2015, but it is unclear to which office the stamp belongs.  ECF No. 55-4 at 17.  The second-level

18 appeal was partially granted.  DSUF ¶ 5; ECF No. 75 at 4.  The response is dated January 1,

19 2016, and was signed by the hiring authority on January 19, 2016.  ECF No. 55-4 at 12-13.  The

20 form reflects that it was "mailed/delivered to appellant" on January 19, 2016, and this is also

21 noted as the date of completion in the appeals tracking system.  Id. at 8, 18.  Plaintiff claims that

22 he did not receive a copy of the response until February 4, 2016, after he notified an appeals

23 coordinator that he had not yet received a response.  ECF No. 75 at 5.

24      On February 29, 2016, plaintiff mailed his third-level appeal to the Office of Appeals

25 where it was received on March 3, 2016, and assigned Appeal Log No. 150988.  DSUF ¶ 7; ECF

26 No. 75 at 5-6.  The appeal was cancelled on June 1, 2016, as untimely.[3]  Id.

27 _____

[3] Plaintiff argues that his appeal was erroneously cancelled but does not dispute that the
28 (continued)

6

1    On July 5, 2016, the Office of Appeals received plaintiff's appeal of the cancellation of

2  Appeal No. HDSP-Z-15-01436 and assigned it Appeal Log No. 1600034.  DSUF ¶ 8; ECF No. 75

3  at 6.  The appeal was rejected on July 20, 2016, on the ground that it inappropriately bypassed

4  required lower levels of review.  ECF No. 55-6 at 129.  On August 15, 2016, the Office of Appeal

5  received plaintiff's resubmitted appeal, which was dated August 8, 2016.  Id. at 141-42.  The

6  resubmitted appeal was rejected on September 7, 2016, on the ground that it was missing

7  documents.  ECF No. 55-6 at 140.  Plaintiff asserts that the documents were missing because staff

8  removed them.  ECF No. 75 at 6.  On September 29, 2016, plaintiff submitted the appeal for a

9  third time, and it was received by the Office of Appeal on October 5, 2016.  ECF No. 55-6 at 151,

10  161.  The appeal was accepted and ultimately denied on November 3, 2016, on the ground that

11  the cancellation of Appeal No. HDSP-Z-15-01436 was proper.  DSUF ¶ 10; ECF No. 75 at 7.

12    In addition to Appeal No. HDSP-Z-15-01436, plaintiff submitted four other non-

13  healthcare grievances that were cancelled on the ground that they were duplicative of Appeal No.

14  HDSP-Z-15-01436.  DSUF ¶ 6; ECF No. 75 at 5.  Plaintiff asserts that he also submitted seven

15  healthcare grievances related to the events of May 19, 2015.  ECF No. 75 at 5.

16    VI.    Discussion

17        A.    Statute of Limitations

18            i.    Legal Standard

19    Because § 1983 does not contain its own statute of limitations, the court applies the forum

20  state's limitations period for personal injury claims.  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th

21  Cir. 1999).  In California, the limitations period is two years.  Jones v. Blanas, 393 F.3d 918, 927

22  (9th Cir. 2004) (citing Cal. Code Civ. Proc. § 335.1).  The court also applies "the forum state's

23  law regarding tolling, including equitable tolling, except to the extent any of these laws is

24  inconsistent with federal law."  Id. (citing Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999)).

25    In California, the limitations period is statutorily tolled for another two years for prisoners

26  serving less than a life sentence.  Cal. Civ. Proc. Code § 352.1(a); Johnson v. State of California,

27  _____

28  cancellation was for being untimely.  ECF No. 75 at 5-6.  DSUF ¶ 7 is therefore deemed
   admitted.

7

1    207 F.3d 650, 654 (9th Cir. 2000).  Additionally, "the applicable statute of limitations must be

2    tolled while a prisoner completes the mandatory exhaustion process."  Brown v. Valoff, 422 F.3d

3    926, 943 (9th Cir. 2005) (citations omitted); Elkins v. Derby, 12 Cal. 3d 410, 414 (1974)

4    ("[W]henever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil

5    action, the running of the limitations period is tolled during the time consumed by the

6    administrative proceeding." (citations omitted)).

7                                 ii.    Discussion

8          Although defendants initially argued that the complaint was filed outside the statute of

9    limitations regardless of whether statutory tolling and tolling during exhaustion run concurrently

10   or consecutively (ECF No. 55-2 at 5-6), they concede in their reply that the complaint is timely if

11   the two tolling periods run consecutively (ECF No. 76 at 3).  Defendants acknowledge that there

12   is no binding authority on whether the tolling provisions run concurrently or consecutively and

13   urge the court to find they run concurrently.  Id. at 3.  In support of their position, they argue that

14   the court should follow its previous decision in Reece v. Basi, No. 2:11-cv-2712 GEB AC, 2013

15   WL 1339048 (E.D. Cal. Apr. 3, 2013), in which the undersigned found that the tolling provisions

16   run concurrently.  Id. at 3.

17         As defendants have recognized, there is currently no binding authority on whether

18   equitable tolling while a prisoner pursues administrative remedies runs concurrently or

19   consecutively to the two-year statutory tolling provided based on incarceration, and there is a split

20   among the district courts that have considered the matter.  In Stevenson v. Holland, the court

21   aptly summarized the applicable tolling rules and the rationale behind the opposing positions as

22   follows:

23              After a claim has accrued, California law may operate to toll the
                running of the limitations period.  Such is the case when a plaintiff is
24              incarcerated for a term less than life; California Code of Civil
                Procedure § 352.1 tolls the statute of limitations for up to two years.
25              The tolling ends at the first of (1) release from custody or (2) two
                years of tolling.  Cabrera v. City of Huntington Park, 159 F.3d 374,
26              378-379 (9th Cir. 1998).

27              In addition to the statutory tolling afforded under California law,
                federal courts in California also apply California's equitable tolling
28              rules in Section 1983 actions.  Cervantez v. City of San Diego, 5 F.3d

                                              8

1273, 1275 (9th Cir. 1993).  Under California law, "the effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded.  As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period . . . ."  Lantzy v. Centex Homes, 31 Cal.4th 363, 370-371 (2003), modified (Aug. 27, 2009).  California's judge-made doctrine of equitable tolling allows tolling of a claim where alternative relief was sought prior to filing suit upon a showing of: (1) "timely notice" of the first claim for relief to the defendants; (2) "lack of prejudice[ ] to the defendant[s]"; and (3) "reasonable and good faith conduct on the part of the plaintiff."  McDonald v. Antelope Valley Comm. College Dist., 45 Cal. 4th 88, 102 (2008); accord Cervantes, 5 F.3d at 1275; Thomas v. Gilliand, 95 Cal. App. 4th 427, 434 (Cal. Ct. App. 2002); see Elkins v. Derby, 12 Cal. 3d 410, 414 (1974) (en banc) (Equitable tolling applies "when an injured person has several legal remedies and, reasonably and in good faith, pursues one.")   The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust remedies within the prison grievance system before filing a related Section 1983 action.  42 U.S.C. § 1997e(a).  Filing of a prisoner grievance can place the defendants on notice of the claim.  Running of the limitations period "must be tolled" during the pendency of the exhaustion process.  Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005); Donoghue v. Orange County, 848 F.2d 926, 930-931 (9th Cir. 1988). . . .

. . . .

Most of the district courts that have permitted equitable tolling in addition to statutory tolling when the tolling events overlap have relied upon language from Lantzy: "[e]quitable tolling under California law operates independently of the literal wording of the [California] Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."  E.g., Carranza v. Lewis, 2017 WL 1050538, *17-18 (N.D. Cal. Mar. 17, 2017); Beard v. Pennington, 2015 WL 7293652, *6-7 (N.D. Cal. Nov. 19, 2015); Burns v. Crook, 2008 WL 5103183, *3 (S.D. Cal. Dec. 3, 2008).  Those courts have read California law regarding equitable tolling to require tacking of additional time (beyond the statutory tolling period) to the end of a limitations period when an equitable tolling event occurs during a period of statutory tolling.  Carranza, 2017 WL 1050538 at *18 ("[N]o matter when [the equitable tolling event] took place, [the duration of the equitable tolling event] is tacked onto the end of the limitations period."); Akhtar v. Mesa, 2014 WL 1922576, *7-8 (E.D. Cal. May 14, 2014); (applying tolling for the duration of the prison exhaustion process and statutory tolling to a prisoner's claim to extend the limitations period beyond four years); Dawkins v. Woodford, 2012 WL 554371, *5 (S.D. Cal. Feb. 21, 2012) (same); Crayton v. Hedgpeth, 2011 WL 1988450, *9 (E. D Cal. May 20, 2011) (same); Burns, 2008 WL 5103183 at *3 (same); see also Adler, 2013 WL 3481584 at *5 (assuming without deciding that the plaintiff could receive the benefit of equitable and statutory tolling even when the tolling events overlap in time).

> The district courts that have declined to apply equitable tolling in addition to statutory tolling when the equitable tolling event overlaps with the period of statutory tolling have relied upon (1) the "common sense" explanation that "when two or more reasons for tolling exist" during the same period that those reasons "will toll concurrently during the time they are both active, and are not tacked consecutively, one upon the other," and (2) Rose v. Petaluma & S.R. Ry. Co. for the proposition that separate periods of disability cannot be tacked. Lopez v. Schwarzenegger, 2012 WL 78377, *5 (E.D. Cal. Jan. 10, 2012); accord Oliver v. McDaniel, 2016 WL 4535389, *3 (C.D. Cal. June 2, 2016); see also Martin v. Biaggini, 2015 WL 1399240, *4 (N.D. Cal. Mar. 26, 2015) (identifying that Rose and Lantzy are both inapt analogs but agreeing that overlapping reasons for tolling should result in only a single period of tolling).

Stevenson, No. 1:16-cv-1831 AWI SKO, 2017 WL 2958731, at *4-6, 2017 U.S. Dist. LEXIS 107170, at *13-14 (E.D. Cal. July 11, 2017) (bracketed alterations in original) (footnotes omitted).  The Stevenson court ultimately held that

> [t]he former camp's reasoning is most consistent with Ninth Circuit authority on tolling pending exhaustion of administrative relief. Brown v. Valoff, 422 F.3d at 943 (tolling the limitations period during the administrative exhaustion process without regard to statutory tolling); see Elmore v. Arong, 2010 WL 366628, *2 (E.D. Cal. Jan. 26, 2010).  Application of statutory and equitable tolling consecutively is also more consistent with the mandate of California law to tack time to the end of the limitations period for equitable tolling. See Lantzy, 31 Cal. 4th at 370-371.

Id., 2017 WL 2958731, at *6, 2017 U.S. Dist. LEXIS 107170, at *14-15.

While the court acknowledges the contrary decision in Reece, it finds the reasoning set forth in Stevenson to be persuasive and more consistent with Ninth Circuit authority on the matter.  Accordingly, the undersigned now agrees with the Stevenson court that the two periods of tolling run consecutively.  Because plaintiff is entitled to consecutive tolling for the time that he pursued his administrative remedies, the complaint is timely.

B.    Exhaustion

i.    Legal Standard

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

1   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

2   Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

3   seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

4   inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

5   exhaustion of available administrative remedies."  Ross v. Blake, 578 U.S. 632, 638 (2016)

6   (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

7          Failure to exhaust is "an affirmative defense the defendant must plead and prove."

8   Jones v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there

9   was an available administrative remedy, and that the prisoner did not exhaust that available

10  remedy."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate

11  of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion'

12  unless *some* relief remains 'available.'"  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005)

13  (emphasis in original).  Therefore, the defendant must produce evidence showing that a remedy is

14  available "as a practical matter," that is, "it must be capable of use; at hand."  Albino, 747 F.3d at

15  1171 (citation and internal quotations marks omitted).  "[A]side from [the unavailability]

16  exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective

17  of any 'special circumstances.'"  Ross, 578 U.S. at 639.  "[M]andatory exhaustion statutes like

18  the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  Id. (citation

19  omitted).

20         For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules,

21  including deadlines, as a precondition to bringing suit in federal court.  Woodford, 548 U.S. at 90

22  ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

23  rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of

24  proper exhaustion."  Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027

25  (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

26  exhaustion'" (quoting Jones, 549 U.S. at 218)).

27         As long as some potential remedy remained available through the administrative appeals

28  process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies.

11

1    Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an

2    inmate must exhaust irrespective of the forms of relief sought and offered through administrative

3    avenues."). The Supreme Court has identified "three kinds of circumstances in which an

4    administrative remedy, although officially on the books, is not capable of use to obtain relief."

5    Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what

6    regulations or guidance materials may promise) it operates as a simple dead end—with officers

7    unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth,

8    532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes,

9    practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable

10   "when prison administrators thwart inmates from taking advantage of a grievance process through

11   machination, misrepresentation, or intimidation." Id. at 644.

12         When the district court concludes that the prisoner has not exhausted administrative

13   remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v.

14   Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by

15   Albino, 747 F.3d at 1168.

16                         ii.    California Regulations Governing Administrative Remedies Process

17         Exhaustion requires that the prisoner complete the administrative review process in

18   accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process

19   is set forth in the California Code of Regulations. At the time relevant to this complaint, those

20   regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by

21   the department or its staff that the inmate or parolee can demonstrate as having a material adverse

22   effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2015).

23         At the time plaintiff was proceeding through the appeals process, it was comprised of

24   three levels of review for most types of appeals. Id. § 3084.7. "The second level [was] for

25   review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level,

26   or for which the first level [was] otherwise waived by [the] regulations." Id. § 3084.7(b).

27   Relevant to the issues here, the third level was "for review of appeals not resolved at second

28   level," "appeals [that] alleged third level staff misconduct," and "appeals [of] a third level

                                                    12

1   cancellation decision or action."  Id. § 3084.7(c).  An inmate was required to "submit the appeal

2   within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or;

3   (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving

4   an unsatisfactory departmental response to an appeal filed."  Id. § 3084.8(b).

5          Each prison was required to have an "appeals coordinator" whose job was to "screen all

6   appeals prior to acceptance and assignment for review."  Id. § 3084.5(a), (b).  The appeals

7   coordinator could also refuse to accept an appeal, whereupon "the inmate or parolee [would] be

8   notified of the specific reason(s) for the rejection or cancellation of the appeal and of the

9   correction(s) needed for the rejected appeal to be accepted."  Id. § 3084.5(b)(3).  An appeal could

10  be rejected if it was "missing necessary supporting documents as established in section 3084.3" or

11  cancelled if it duplicated a previous appeal or the "[t]ime limits for submitting the appeal [were]

12  exceeded even though the inmate or parolee had the opportunity to submit within the prescribed

13  time constraints."  Id. § 3084.6(b)(7), (c)(2), (c)(4).  A rejected appeal could "later be accepted if

14  the reason noted for the rejection [was] corrected and the appeal [was] returned by the inmate or

15  parolee to the appeals coordinator within 30 calendar days of rejection."  Id. § 3084.6(a)(2).  A

16  cancelled appeal could not be accepted unless it was determined that the cancellation was in error

17  or new information made the appeal eligible for further review.  Id. § 3084.6(a)(3), (e).  However,

18  the cancellation of the appeal could be separately appealed.  Id. § 3084.6(e).  "[A] cancellation or

19  rejection decision [did] not exhaust administrative remedies."  Id. § 3084.1(b).

20                     iii.    Discussion

21          There is no dispute that a grievance process existed during the relevant time period.  The

22  parties are also in agreement that Appeal No. HDSP-Z-15-01436 addressed the claims at issue in

23  this case.  Instead, the parties dispute whether plaintiff was prevented from properly exhausting

24  Appeal No. HDSP-Z-15-01436.  Defendants argue that plaintiff failed to exhaust his

25  administrative remedies because Appeal No. HDSP-Z-15-01436 was cancelled as untimely at the

26  third level of review and plaintiff's appeal of the cancellation was appropriately denied on the

27  ground that the cancellation was proper.  ECF No. 55-2 at 8-9.  Plaintiff argues that Appeal No.

28  HDSP-Z-15-01436 was improperly cancelled because he submitted his third-level appeal within

13

1    thirty days of receiving the response to his second-level appeal and the denial of his appeal of the

2    cancellation was in error.

3           If, as plaintiff avers, he did not receive the second-level response until February 4, 2016,

4    then his third-level appeal, which was mailed on February 29, 2016, was timely and Appeal No.

5    HDSP-Z-15-01436 was improperly cancelled.  See Cal. Code Regs. tit. 15, § 3084.8(b) (appeal

6    due within thirty calendar days of receiving unsatisfactory response).  Plaintiff has provided a

7    sworn statement that he first received the second-level response on February 4, 2016.  ECF No.

8    75 at 5.  While defendants argue that he received the response on January 19, 2016, their only

9    evidence of this fact is that prison records show the appeal was completed on that date and the

10   grievance form indicates that the response was mailed or delivered on that date.  ECF No. 55-4 at

11   3, 18.  There is no evidence to establish whether January 19, 2016, was the date of mailing or the

12   date that the response was actually delivered to plaintiff.  Moreover, even without the ambiguity

13   surrounding whether the response was mailed or delivered on that date, the unexplained date

14   discrepancies in the records, as outlined above in the undisputed facts, call into question the

15   reliability of defendants' evidence to establish purported dates of receipt.  Defendants have

16   therefore failed to rebut plaintiff's evidence that he did not receive the appeal until February 4,

17   2016.

18          To the extent defendants argue that plaintiff failed to timely appeal because even if he

19   received the response on February 4, 2016, he "would have had more than two weeks left to

20   submit a timely appeal," ECF No. 76 at 4, they misstate the applicable timeframes.  The

21   regulations provided that an appeal was due within thirty days of first having knowledge of the

22   appeal decision being appealed or of receiving an unsatisfactory response.  Cal. Code Regs. tit.

23   15, § 3084.8(b).  If plaintiff was not aware of and did not receive the response until February 4,

24   2016, he had thirty days from that date to file his appeal.

25          The evidence before the court demonstrates that plaintiff's third-level appeal was timely

26   and the cancellation was therefore improper.  Plaintiff availed himself of his remaining

27   ////

28   ////

1   administrative remedies by appealing the cancellation,[4] but the appeal was denied and the

2   cancellation was upheld.  Because "improper screening of an inmate's administrative grievances

3   renders administrative remedies 'effectively unavailable' such that exhaustion is not required

4   under the PLRA," Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010), the undersigned finds that

5   plaintiff's administrative remedies were unavailable and he was excused from exhaustion.

6        VII.    Conclusion

7        Defendants' motion for summary judgment should be denied because the complaint was

8   timely filed and plaintiff has demonstrated that administrative remedies were unavailable, thus

9   excusing him from the exhaustion requirement.

10                                CONCLUSION

11       IT IS HEREBY ORDERED that plaintiff's request for a ruling (ECF No. 78) is

12  GRANTED to the extent that findings and recommendations have now issued.

13       IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment

14  (ECF No. 55) be DENIED.

15       These findings and recommendations are submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17  after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20  objections shall be served and filed within fourteen days after service of the objections.  The

21  parties are advised that failure to file objections within the specified time may waive the right to

22  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED:  September 7, 2022.

24  _____
    ALLISON CLAIRE
25  UNITED STATES MAGISTRATE JUDGE

26  _____
    [4] The court notes that plaintiff's initial attempt to appeal the third-level cancellation was
27  improperly rejected on the ground that it inappropriately bypassed required lower levels of
    review.  See ECF No. 55-6 at 129.  Under the regulations, the third level of appeal was for
28  "appeals [of] a third level cancellation decision or action."  Cal. Code Regs. tit. 15, § 3084.7(c).